## JOHN POWERS v. ST. LOUIS TRANSIT COMPANY, Appellant.

**Division Two, March 19, 1907.**

1. **CONTRIBUTORY NEGLIGENCE: Stepping in Front of Car: Demurrer.** If the railroad company was not itself guilty of negligence contributing to the injury to plaintiff's wife, a pedestrian crossing the street, her failure to look and listen for the approach of the car before stepping upon the track, or her stepping upon the track immediately in front of the moving car, was such negligence as to preclude a recovery by her husband. But, if the facts bearing on the issue of her negligence in not looking or in stepping on the track are disputed, or are undisputed but admit of different constructions and inferences, no demurrer to the evidence should be sustained, but the case should go to the jury.

2. ———: ———: **Assumption: Excessive Speed.** A pedestrian about to cross a street in front of a car has the right to assume that it is not being run in excess of the maximum ordinance speed.

3. ———: ———: **Looking for Car: Presumption.** The presumption is that a pedestrian about to cross a street railway track in front of an approaching car, looked and saw the car, that is, was in the exercise of due care, but whether or not she did look is a question for the jury, where the evidence is in dispute.

4. **CROSSING TRACK: Excessive Speed: Stopping Car: Looking: Demurrer.** If a pedestrian did not know, or in the exercise of due care could not have known, that a street car was running at an excessive speed, she is not guilty of negligence in proceeding to cross the street in front of the car, using ordinary care and caution in so doing. And if the evidence shows that the car was running at an excessive speed when she left the sidewalk, and looked to see (as the law presumes she did) if the car was approaching; and if the car was then nearly a block away and she walked in a diagonal direction towards the track; and if from the time she left the sidewalk the motorman saw her, but continued to run his car at an excessive speed, and despite his sounding of the bell and other signals she paid no attention and seemed unconscious; and if he could have stopped the car in 20 or 25 feet running as he was, he must have seen her perilous position in time to have avoided injuring her, and the case should go to the jury.

5. ———: **Presumption of Looking: Overturning Evidence.** The presumption is that a person about to cross a street railway track in front of an approaching car did look and did see the car, even though there is no positive testimony that she saw it. And that presumption is not overcome by the testimony of the motorman that "she did not seem to look or notice anything" or by that of the conductor that he "did not see her look back at all," for that testimony is wholly negative, and it is not unreasonable to suppose that she looked though they did not see her look.

6. ———: **Getting Across in Safety: Inference.** Though there is no direct evidence that a pedestrian would have gotten across the track in safety had the car been running within the ordinance rate, that she could have done so may be inferred from the facts and circumstances in evidence—the width of the street, the distance she had to travel before reaching the track, the car's rate of speed at the time, its distance from her when the motorman saw her, and the distance the car traveled after striking her.

7. ———: ———: **Slacking Speed of Car.** It is the duty of a motorman to slacken the speed of his car or to stop it as soon as possible after he sees a pedestrian in front in a place of danger, even though she may be guilty of negligence at the time.

8. ——: ——: **Excessive Speed: Assumption.** Unless the car is being run at a lawful speed when the motorman sees a pedestrian about to cross the track in front, he has no right to assume that she will remain off of the track in a place of safety.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Blevins,* Judge.

AFFIRMED.

*Boyle & Priest, Edward T. Miller* and *George T. Priest* for appellant.

(1) The court erred in overruling defendant's demurrer to the evidence. When the evidence conclusively shows that the negligence of the injured party alone caused the injury, or when the evidence fails to disclose any negligence on the part of defendant, a demurrer to the evidence should be sustained. The failure to look and listen before stepping on railway tracks for the approach of a car, or stepping on railway tracks immediately in front of a moving car, is such negligence on the part of plaintiff as will bar a recovery. Boring v. Railroad, 194 Mo. 541; Schmidt v. Railroad, 191 Mo. 215; Reno v. Railroad, 180 Mo. 469; Roenfeldt v. Railroad, 180 Mo. 554; Ries v. Railroad, 179 Mo. 1; Markowitz v. Railroad, 186 Mo. 350; Hornstein v. Railroad, 195 Mo. 440; Boring v. Railroad, 194 Mo. 541. The demurrer to the evidence should have been sustained for two reasons: first, because the evidence conclusively shows that the injury to plaintiff's wife was caused by her own negligence in not looking for and in stepping upon the tracks immediately in front of defendant's car; secondly, because the evidence fails to establish any negligence on the part of defendant. (2) The court erred in giving plaintiff's instruction 2. The instruction is erroneous because it is based upon facts not in the evidence and because it

rests upon inference and conjecture. There is no evidence that deceased saw the approach of defendant's car. The testimony on behalf of plaintiff upon the question whether she looked or not is furnished by the motorman, and by him alone. It was to the effect that she did not look. He was positive about that. His being the only testimony on behalf of plaintiff upon this issue, plaintiff is bound absolutely by it. Reno v. Railroad, 180 Mo. 483. The instruction is erroneous for the further reason that there is no evidence that plaintiff could have gotten across the track in safety if the car had been running at the rate of eight miles an hour. As to that question it all rests upon conjecture and inference. There was no testimony as to how fast she was going or how fast she would have to walk to get across the track to avoid a car running at eight miles an hour, and no evidence how far in front of the car she would have to start to cross, to get across safely, if the car had been running at eight miles an hour.

*A. R. Taylor* for respondent.

(1) The law is that if a pedestrian is about to cross a public street, and looks and sees a car at a distance away sufficient to allow the pedestrian a safe passage if the car shall not be run faster than the law or ordinance permits, and the pedestrian does not know, or in the exercise of ordinary care would not know, that the car was run at a speed in excess of the lawful rate, then he or she is guilty of no negligence in proceeding to cross the street using ordinary care and expedition in doing so. Weller v. Railroad, 164 Mo. 199; Riska v. Railroad, 180 Mo. 188; Eckhard v. Railroad, 190 Mo. 613. (2) The law presumes in favor of a person injured that he or she was exercising ordinary care, and whilst this is a rebuttable presumption, it is upon the tortfeasor to rebut it by evidence

sufficient to overcome the presumption. In this case the evidence produced by defendant to rebut this presumption is flatly contradicted by the evidence for plaintiff. Thus, defendant's evidence to rebut the presumption is that its servants gave warning by bell— slowed down the car—hallooed. The evidence for the plaintiff tended to prove the contrary, so that the presumption of care remained to be considered by the jury. Buesching v. Gas Co., 73 Mo. 233; Weller v. Railroad, 164 Mo. 180; Riska v. Railroad, 180 Mo. 168; Eckhard v. Railroad, 190 Mo. 613; Rapp v. Railroad, 190 Mo. 144; Goff v. Railroad, 199 Mo. 694. (3) It is the settled law of this State that although a person may, through his or her negligence, be in a position of peril, yet if the party inflicting the injury saw the party in peril, or by the exercise of ordinary care, would so have seen the peril of the party, and thereafter could, by the exercise of the care required by law, have averted the injury and neglected to do so, then in that event the party inflicting the injury is liable, notwithstanding the negligence of the injured party. After a gigantic struggle throughout the courts of this country, the result is as declared above. Reardon v. Railroad, 114 Mo. 406; Chamberlain v. Railroad, 133 Mo. 599; Klockenbrinck v. Railroad, 172 Mo. 687; Scullin v. Railroad, 184 Mo. l. c. 707; Goff v. Railroad, 199 Mo. 694. This case was tried absolutely and precisely in accord with the authorities above cited. The instructions followed the announcements of the above-cited cases, and this case we submit is free from criticism, if the Riska case, the Eckhard case, the Scullin case, the Goff case, and the other cases cited are the law of this State.

BURGESS, J.—Plaintiff, the husband of Mrs. Maggie Powers, deceased, prosecutes this action under section 2864, Revised Statutes 1899, to recover five thousand dollars damages for the killing of his wife, by

reason of the negligence of the defendant's employees in charge of its car, on the 27th day of November, 1900, at a point on South Seventh street south of Rutger street in the city of St. Louis.

The petition alleges in substance that defendant, at the times alleged, was a corporation by virtue of the laws of Missouri, and used and operated the railway and car mentioned for the purpose of transporting persons for hire from one point to another in the city of St. Louis. That at said times South Seventh street at the places mentioned was an open public street within the city of St. Louis. That plaintiff was the husband of Maggie Powers at the time of her death as mentioned in the petition. That on the 27th day of November, 1900, the plaintiff's wife was lawfully crossing South Seventh street about ninety feet south of Rutger street, in the city of St. Louis, when defendant's servants, its motorman and conductor in charge of its south-bound car on South Seventh street, carelessly and negligently, and without using any care to watch for persons on defendant's track, or moving towards it, and in danger of being injured by said car, and without using any care to give any signal by bell or otherwise to plaintiff's wife of the approach of said car, and without using any care to control the movements of said car or stop same to avoid injury to plaintiff's wife, and whilst running said car at a high and reckless speed, and without using any care to control the fender of said car to prevent the plaintiff's wife from being injured by said car, caused and suffered said car to run upon, drag, crush and kill the plaintiff's said wife.

And for another and further assignment of negligence, the plaintiff avers that at time of the injury and death of said wife, there was in force within the city of St. Louis an ordinance thereof, by which it was provided that motormen and conductors of street cars

should keep a vigilant watch for persons on foot either on the track or moving toward it, and upon the first appearance of danger to such person the car should be stopped within the shortest time and space possible; yet the plaintiff avers that defendant's motorman and conductor in charge of said car failed to keep such vigilant watch and failed to stop said car within the shortest time and space possible, which violation of said ordinance directly contributed to cause the injury and death of the plaintiff's wife. And for another and further assignment of negligence the plaintiff avers that at the time of the injury and death of his wife there was in force within the city of St. Louis an ordinance thereof, whereby it was provided that such cars should not be run at a speed in excess of eight miles per hour in the city of St. Louis; yet the plaintiff avers that at the time of and before said car ran upon and killed his wife, as aforesaid, said car was being run by defendant's motorman and conductor at a speed greatly in excess of eight miles per hour, to-wit, from fifteen to twenty miles per hour, in violation of the ordinance of the city of St. Louis, which excessive speed and violation of said ordinance directly contributed to cause the death of the plaintiff's wife. That by the death of his wife, as aforesaid, an action has accrued to the plaintiff to sue for and recover five thousand dollars according to the statute in such cases. Wherefore, plaintiff prays judgment for five thousand dollars.

The answer was a general denial, and a plea of contributory negligence upon the part of plaintiff's deceased wife, in that she failed to look or listen for defendant's car, and in allowing herself to be placed in a position of danger upon defendant's track when it was too late for those in charge of its car to stop the same and avoid striking her.

The reply to the answer was a general denial. The

trial resulted in a verdict and judgment in favor of plaintiff for the sum of five thousand dollars. In due time defendant filed motions for new trial and in arrest of judgment, which were overruled, and defendant appealed.

Mrs. Powers, according to the evidence, was walking across Seventh street, from the east to the west side thereof, at a point from ninety to one hundred feet south of the intersection of South Seventh and Rutger streets, about 11 o'clock a. m., on the 27th day of November, 1900, and while crossing the track of defendant its south-bound car ran upon and so injured her that she died from said injuries three days thereafter. The rate of speed fixed by the ordinance of the city, which was read in evidence, was limited to not exceed eight miles per hour, while the evidence tended to show that the speed of this car was from ten to eighteen miles per hour. The evidence also tended to show that defendant's motorman saw the deceased when she stepped off of the sidewalk and walked across the street towards the track on which the car was moving, and saw her continuously until she stepped upon the track, four or five feet in front of the car, and saw that she was paying no heed thereto. The street was about fifty feet between the curbs, and as deceased was walking across it diagonally, or in a southwesterly direction, she must have walked about thirty feet between the time the motorman saw her step off of the sidewalk and the time she was struck by the car. An ordinance of the city of St. Louis, requiring the motormen and conductors of street cars to keep a vigilant watch for persons on foot, either on the track or moving toward it, and, upon the first appearance of danger to such persons, to stop the car within the shortest time and space possible, was put in evidence, as was also the ordinance prohibiting a higher rate of speed

than eight miles per hour. Upon this showing plaintiff rested.

Thereupon defendant asked an instruction in the nature of a demurrer to the evidence, which was refused, and defendant excepted.

Mrs. Charles Anderson, in behalf of the defendant, testified as follows:

"Q. Where do you live? A. At that time 2839 South Seventh.

"Q. How long have you lived there? A. I couldn't say how long I had lived there; only a few months.

"Q. How long have you lived in St. Louis? A. Since 1900.

"Q. Were you a passenger on the car going south on Seventh street on November 27th? A. Yes, sir.

"Q. That collided with Mrs. Powers? A. Yes, sir.

"Q. Do you know where Rutger street is? A. Yes, sir.

"Q. How was the car running along there? A. Why, I don't think it was running so very fast; running rather slow to me.

"Q. Was it running slow? A. Yes, sir.

"Q. Now, tell just what you saw and heard about this accident? A. I was sitting in the rear end of the car and I never saw the lady at all until they took her out from under the car.

"Q. The car, you say, was running at a moderate rate? A. Yes, sir.

"Q. Well, what, if anything, did the motorman do? A. The motorman kept ringing the bell, and he hallooed twice, but I never looked up to see what was happening.

"Q. How soon was the car stopped after he hallooed? A. It didn't seem but a second to me.

"Q. Very short? A. Yes, sir.

"Q. Would you undertake to say in how many feet? A. No, sir; I couldn't, because I was sitting in the rear end of the car and I couldn't tell anything about it.

"Q. 'Very short' would be the best definition that you could give? A. Yes, sir.

"Q. How did the stop affect the passengers? A. It didn't affect them very much.

"Q. It didn't shake anybody out of their seats? A. No, sir.

"Q. Do you know anything about stopping cars? A. No, sir.

"Q. And the stop was made within a few feet, would you say? A. I couldn't say; I was in the rear end of the car; I wasn't paying much attention; I heard the ringing of the bell, and I heard him halloo, but my attention was drawn to my baby, and I didn't look up.

"Q. You didn't get out of the car? A. No, sir."

Mary Shenkle testified as follows:

"Q. Were you a passenger on the 27th of November on the car on South Seventh street that collided with Mrs. Powers? A. Yes, sir.

"Q. How was that car running? A. Oh, it was not running so fast, not slow and not fast, either.

"Q. What, if anything, did you see the motorman do or hear him do before this accident? A. I heard the motorman halloo; he hallooed and rung the bell; that is all I seen and heard of it.

"Q. How far did the car go after he hallooed? A. Oh, not much; he stopped as quick as he could.

"Q. Did you see Mrs. Powers before she got hurt? A. No, sir."

On cross-examination, she stated as follows:

"Q. You don't know how fast the car was going, do you? A. No, sir.

"Q. In stopping the car it didn't disturb you in your seat, at all? A. No, sir."

On redirect examination she said:

"Q. Did you see the woman after she was injured? A. Yes, sir; I went out to see her, and I seen her lying on the sidewalk.

"Q. She was on the sidewalk? A. Yes, sir.

"Q. You didn't see her while she was under the car? A. Yes, sir; I seen two men pull her away from there and lay her on the sidewalk.

"Q. The front wheels hadn't reached her? A. I can't remember no more. I couldn't look at it much. I felt funny and I didn't stop to look."

Charles Holt, in behalf of defendant, testified as follows:

"Q. Where do you live? A. 1918 Oregon avenue.

"Q. What is your business? A. I am in school, at present.

"Q. What was your business in November, 1900? A. I was working for the Transit Company—conductor.

"Q. Were you in charge of the car that collided with Mrs. Maggie Powers, as conductor? A. Yes, sir.

"Q. What part of the car were you on at the time of the collision? A. Rear platform.

"Q. You may tell the jury about the rate of speed of the car as it approached the place where the accident happened? A. Well, I should say it was about ten miles an hour—ten or twelve miles an hour, something like that.

"Q. Did you see Mrs. Powers? A. Yes, sir.

"Q. Where was she when you saw her? A. Well, she was just on the north-bound track.

"Q. How far from the car? A. Well, that would be about ten feet—eight or ten feet.

"Q. What did the motorman do there? A. Well, he drew my attention to it by the sounding of the bell.

"Q. You may state whether he sounded it loud or otherwise? A. Yes, sir; it was an unusual sounding, was the reason that I noticed it, and he then also hallooed two or three times; but it was the sounding of the bell that I noticed was something wrong and happened to look up.

"Q. What did Mrs. Powers do? A. She was walking at an angle across the street with a shawl over her head, and seemed to be just walking along, that was all.

"Q. I mean what did she do after you saw her— what became of her? A. Disappeared from the front of the car, or from the corner, rather.

"Q. Which side of the car was she on? A. The east side.

"Q. She was coming from the east side of the street towards it? A. She was coming from the east, or rather northeast—she was kind o' slanting across.

"Q. From the east going to the northwest? A. Going to the southwest.

"Q. Then what did the motorman do shortly after he hallooed or you heard the bell rung? A. Well, he was making all efforts to stop the car.

"Q. What did he do? A. He was winding on the brake, and he throwed off the power, of course.

"Q. How far did the car go after it struck her? A. I should judge fifteen feet—that is, after the woman left my sight, you see?

"Q. You think the car went fifteen feet after the woman left your sight? A. Yes, sir."

On cross-examination, the witness stated:

"Q. As you saw it she was walking diagonally across to the southwest? A. Yes, sir.

"Q. And had a shawl over her head? A. Yes, sir.

"Q. You didn't see her look back, at all? A. No, sir."

"Defendant rests."

The above was all the testimony offered.

Thereupon, the defendant offered the following peremptory instruction at the close of all the evidence, to-wit:

"The court instructs the jury that under the pleadings and all the evidence in the cause they should find for the defendant."

Which said instruction the court refused to give the jury; to which refusal of the instruction thus prayed, the defendant, by counsel, duly excepted at the time.

Among other instructions, the court gave the following: "The court instructs the jury that there is no evidence in the case that would justify them in finding that the motorman in charge of the car failed or neglected to keep a vigilant watch for persons either upon the track or moving towards it."

Defendant insists that the court erred in overruling its demurrer to the evidence. It is argued that the evidence conclusively shows that the negligence of Mrs. Powers alone was the cause of her injury, and that as it fails to show any negligence upon the part of the defendant, the demurrer should have been sustained; that her failure to look and listen before stepping upon the track for the approach of a car, or her stepping upon the track immediately in front of the moving car, was such negligence on the part of Mrs. Powers as to preclude a recovery by her husband.

That this is the general rule, in case the railroad company is not itself guilty of negligence contributing to the injury, is clearly shown by the authorities cited by counsel for defendant in their brief, viz: Ries v. Railroad, 179 Mo. 1; Reno v. Railroad, 180 Mo. 469; Roenfeldt v. Railroad, 180 Mo. 554; Markowitz v. Railroad, 186 Mo. 350; Schmidt v. Railroad, 191 Mo. 215;

Boring v. Railroad, 194 Mo. 541; Hornstein v. Railroad, 195 Mo. 440.

The question, therefore, is, was the evidence all one way? In other words, did it conclusively show that the injury to plaintiff's wife was caused by her own negligence in not looking for, and in stepping upon the track immediately in front of defendant's car? If so, the demurrer should have been sustained. But, on the other hand, if the facts bearing on the issue are disputed, or are undisputed but admit of different constructions and inferences, it must be left to the jury to decide the question of negligence. [Berry v. Railroad, 124 Mo. 223; Eckhard v. Railroad, 190 Mo. 593; Marshall v. Schricker, 63 Mo. 308; Ostertag v. Railroad, 64 Mo. 421; Mauerman v. Siemerts, 71 Mo. 101; Charles v. Patch, 87 Mo. 450; Tabler v. Railroad, 93 Mo. 79; Fletcher v. Railroad, 64 Mo. 484; Huhn v. Railroad, 92 Mo. 440; Railroad v. Ives, 144 U. S. 408; Roddy v. Railroad, 104 Mo. 234; Bell v. Railroad, 72 Mo. 50; Nagel v. Railroad, 75 Mo. 653; Petty v. Railroad, 88 Mo. 306.]

The only evidence that Mrs. Powers did not look for the approaching car was that of the motorman, who testified that she did not look, while the presumption is that she was in the exercise of due care; that is, that she looked and saw the car (Buesching v. St. Louis Gaslight Co., 73 Mo. 219; Weller v. Railroad, 164 Mo. 180; Riska v. Railroad, 180 Mo. 168; Eckhard v. Railroad, supra; Rapp v. Railroad, 190 Mo. 144; Goff v. Railroad, 199 Mo. 694); but assuming, as she had a right to do, that the car was not being run at a rate of speed in excess of that prescribed by ordinance, and she did not know, or, in the exercise of ordinary care, could not have known that it was so running, she was not guilty of negligence in proceeding to cross the street, using ordinary care and caution in so doing. Whether she looked or not was, of course, a question for the jury. The evidence all shows that the car was running at an

excessive rate of speed when deceased left the sidewalk and looked to see, as the law presumes she did, if the car was approaching, which at that time must have been nearly a block away. She walked not directly towards the track, but in a southwesterly direction. From the time she left the sidewalk, until struck by the car, the motorman saw her, and when he apprehended danger to her he threw off the power, began sounding the bell and hallooing to her, but she paid no attention to either, seemed unconscious of danger, and took no notice of the warning. The motorman could have stopped the car in from twenty to twenty-five feet had it been running at the rate of eighteen miles an hour, and in a much shorter space had the car been running at a rate of speed not exceeding eight miles per hour. If the motorman saw the deceased all the time after she left the sidewalk until struck by the car, he must have seen her perilous position in time to have checked up the car and avoided the injury.

After due consideration of all the testimony adduced upon the trial of this cause, and of the proper and legitimate deductions to be drawn by the jury therefrom, we are unwilling to say that the court committed error in overruling the demurrer to the evidence.

It is claimed that plaintiff's instruction numbered 2 is erroneous and should not have been given. It is as follows:

"The court instructs the jury that if the plaintiff's wife, as she started and walked across to defendant's south-bound tracks, saw defendant's south-bound car mentioned in the evidence approaching going south; and if the said car was at such a distance as not to imperil her in crossing said track, if said car was not running faster than eight miles an hour; and if the plaintiff's wife did not know that said car was running at a speed in excess of eight miles an hour, and in the exercise of ordinary care in looking and listening would not have so known; and if said car was in fact running

at a speed in excess of eight miles an hour, then the court instructs the jury that plaintiff's wife had a right to cross said track, relying on said car not being run in excess of eight miles an hour, and using ordinary care and expedition in doing so, and if she was doing so, she was not negligent.''

It is said that this instruction is erroneous because based on facts not in evidence, and because it rests upon inference and conjecture. That there is no positive evidence that deceased saw the approach of defendant's car is true, but the presumption is that she was in the exercise of due care and did look and did see it, while the only testimony upon the question is that of the motorman and conductor, the former of whom stated in his deposition that she "did not seem to look or notice anything," and the latter testified that he "did not see her look back at all;" and it is contended by defendant that plaintiff is absolutely bound by this testimony. But this testimony by no means proves that the deceased did not look for and see the car, for, at most, it is merely negative testimony, and is wholly insufficient to overcome the presumption that deceased looked and saw the car. It is not unreasonable to suppose that she looked, even though neither the motorman nor the conductor saw her do so. In Reno v. Railroad, 180 Mo. 469, so confidently relied upon by defendant, it was held that a woman about to cross a street car track could not indulge the presumption that the car would not be run at a rate of speed in excess of the maximum rate prescribed by ordinance, and that she could, therefore, cross in safety, if she did not see the approaching car or did not look for it, for she had no foundation on which to base such a presumption. But that case differs from the case at bar, in that here the presumption is that deceased looked and saw the approaching car before attempting to cross the track, and, therefore, had the necessary foundation upon which to base such a presumption, while in that case she had not.

As to the contention that the instruction is erroneous for the further reason that there is no evidence that Mrs. Powers could have gotten across the track in safety if the car had been running at the rate of eight miles per hour, it must be said that there was no direct evidence as to that fact; but there were facts and circumstances in evidence, such as the width of the street, the distance or approximate distance she had to travel before reaching the railway track, the rate of speed of the car at the time, its distance from the deceased when the motorman saw her, and the distance the car traveled after striking her, from all of which it might be inferred that she could have gotten across the track had the car been running at that rate of speed.

A final contention is that the court erred in refusing to give instruction numbered 8 asked by defendant, which instruction is as follows:

"The court instructs the jury that the motorman was under no obligation to slacken the speed of his car or stop the same because plaintiff's deceased wife was approaching the track, but he had the right to proceed with his car on the assumption that plaintiff would remain off the track in a place of safety."

Such an instruction would be misleading, in that it says that the motorman was under no obligation to slacken the speed of his car or to stop the same because deceased was approaching the track, while entirely ignoring the fact that it was his duty to slacken the speed of or stop his car as soon as possible after he saw her in a place of danger, even though she might have been guilty of negligence at the time. Nor had the motorman the right to proceed with his car, which at the time was running at an excessive speed in violation of law, and to assume that the deceased would remain off the track in a place of safety. If the car had been running at a lawful rate of speed when the motorman saw deceased approaching the track, this part of the instruction would present correctly the law upon that question,

but, under the facts disclosed by the evidence, it is not correct.

Our conclusion is that the judgment should be affirmed. It is so ordered. All concur.