BELLA LISTON, Respondent, v. ST. LOUIS TRANS-FER RAILWAY COMPANY, Appellant.

Springfield Court of Appeals, July 7, 1910.

1. MASTER AND SERVANT: Railroads: Negligence: Contributory Negligence: Obstruction Near Track. A brakeman while engaged in switching and taking out a car on a switch track, was directed to watch the cars to see that they cleared a gas tank located very near the track. He performed this duty and from the circumstances surrounding his death, it appeared that he then got on the rear of the train and was crushed between the car on which he was probably riding, and the wall of the building constructed near the track. The accident happened on a dark night. *Held,* that there was sufficient evidence to warrant the jury in finding that deceased was in the line of his duty at the time of his death, and that defendant was negligent in ordering the crew of which deceased was a member to operate on that switch track in the nighttime.

2. ———: ———: Contributory Negligence: Obstruction Near Track: Supplying Servant with Lantern. Where a brakeman while engaged in switching cars at night was crushed and killed between a boxcar and the wall of a building located in close proximity to the track, *held*, that the mere fact that deceased had a lantern was not sufficient to show in this case that he was guilty of contributory negligence.

3. ———: ———: Presumptions: Dangerous Place to Work: Burden of Proof: Instructions. A brakeman while assisting in switching and coupling cars, was crushed between a boxcar and a wall adjacent to the track, and instantly killed. Under the evidence it was held that the presumption was that the deceased was in the proper discharge of his duty, and was exercising ordinary care at the time he was killed, and that if defendant would excuse itself of having ordered the deceased to work in the dangerous situation in which it placed him, the burden was upon it and not upon plaintiff to explain how deceased came to his death, and that under the evidence it was proper for the court to refuse an instruction to the effect that the jury should find for the defendant in case they could not find from the evidence how the deceased met his death.

4. INSTRUCTIONS: Railroads: Master and Servant: General and Specific Orders. Where a train crew is given an order to find a certain car and take it out, the order is equivalent to a command to go to any place where the car might be located, and has the same effect as if the master had known at the time he gave the order, where the car was located, and specifically directed the men to go to that place with the train and get the car, and proof of the general order is sufficient upon which to base an instruction covering the specific order.

Appeal from St. Charles Circuit Court.—*Hon. James D. Barnett*, Judge.

AFFIRMED.

*Watts, Williams & Dines* and *William R. Gentry* for appellant.

(1) The demurrer to the evidence should have been sustained; because there was no negligence shown on the part of the defendant, the plaintiff having failed to prove the negligence charged in the petition. R. S. 1899, secs. 1119, 1120; Thomas v. Railroad, 109 Mo. 187; Herbert v. Boot & Shoe Co., 90 Mo. App. 305; Nugent v. Milling Co., 131 Mo. 241; Goransson v. Mfg. Co., 186

Mo. 300; Browning v. Railroad, 106 Mo. App. 729; Harper v. Railroad, 187 Mo. 575.

*A. R. Taylor* and *Howard Taylor* for respondent.

(1)   The deceased when receiving the order to do this work had the right to assume that the place where he was ordered to do the work was reasonably safe and to act on such assumption. Sullivan v. Railroad, 107 Mo. 78; Bane v. Irvin, 172 Mo. 316; Korner v. Car Co., 209 Mo. 157.  (2)   No eye saw the deceased, from the time he  left the tank, where he waited to see whether the car would clear it, until his limp, dead body is found at or near his post of duty.  In such a condition of the record the law presumes that the deceased was in the exercise of ordinary care at the time of his death and was guilty of no negligence  causing  his  death. Buesching v. Gas Co., 73 Mo. 233; Schlereth v. Railroad, 115 Mo. 100; Powers v. Transit Co., 202 Mo. 280.

STATEMENT.—This is an action for damages in the sum of five thousand dollars resulting to the plaintiff from the death of her husband, Dennis U. Liston, while in the service of defendant, Saint Louis Transfer Railway Company, as a switchman at and about the work of coupling up a car and train at or near premises known as house number 3600 North Second street in the city of St. Louis, by reason of his being crushed to death between a car operated by appellant and the wall of said building. This suit was originally brought against the St. Louis Transfer Railway Company, the St. Louis Merchants' Bridge Terminal Railway Company and the Mallinckrodt Chemical Works.  A demurrer by the St. Louis Merchants' Bridge Terminal Railway Company was sustained and plaintiff dismissed as to that company.  Before the trial plaintiff discovered that the Mallinckrodt Chemical Works was the wrong defendant, since the plant where the accident happened was owned by the National Ammonia Company.  Plaintiff, there-

fore, dismissed as to the Mallinckrodt Chemical Works, and trial was had against appellant, St. Louis Transfer Railway Company alone.

The petition in this case alleged the incorporation under the laws of Missouri of the various defendants; that defendant St. Louis Transfer Railway Company at said times used and operated the engines and cars mentioned; that the defendant, Mallinkrodt Chemical Works owned and occupied the premises mentioned, known as No. 3600 North Second street in the city of St. Louis, on which at the times mentioned was located the railway tracks and cars and wall mentioned; then alleged that the switch track on the premises of the Mallinckrodt Chemical Works was located and maintained by the Mallinckrodt Chemical Works so near to a wall that it was liable to cause a man to be crushed and injured while working upon said track or being about cars on said track, which fact, it alleges, was known to the said Mallinckrodt Chemical Works and to the St. Louis Transfer Railway Company.

That the plaintff was the lawful wife of D. U. Liston at the time of his death; that on the 6th day of June, 1904, the plaintiff's husband, D. U. Liston, was in the service of the defendant St. Louis Transfer Railway Company as a switchman with the engine herein mentioned, and a part of the duty of his employment was to be on and about said cars to couple and uncouple the same. That on the said day, in the nighttime, the plaintiff's said husband, in the discharge of the duties of his said employment, and in obedience to the orders of the agent of his said employer, St. Louis Transfer Railway Company, having authority from said employer to command and control him in the work he was to do on the premises of defendant, Mallinckrodt Chemical Works, engaged in aiding in the work at and about of coupling up and taking out a car or cars from said premises, when, owing to said dangerous proximity of the track on which said car was moved,

he was caught and crushed between a car and the said wall and so injured that he died from said injuries. It is then alleged that the defendant St. Louis Transfer Railway Company was negligent in ordering the plaintiff's said husband to do said work at said times in view of the knowledge of said defendant of the conditions existing on said premises.

The separate answer of defendant, St. Louis Transfer Railway Company consisted of a general denial, a charge of contributory negligence on the part of Liston in negligently going to a portion of the premises referred to in plaintiff's petition where he knew it was dangerous for him to attempt to pass between the track and the wall, and a charge of assumption of risk on the part of said Liston. Plaintiff replied with a general denial. A change of venue was taken by plaintiff and the case was sent to St. Charles county.

Plaintiff's evidence tended to show that plaintiff's husband, D. U. Liston, had been employed for some time previous to his death by the defendant St. Louis Transfer Railway Company, as a switchman; that on the night of June 6, 1904, he was working with a switching crew of which one George Hiam was foreman. By order of Blevins, the night yardmaster, Hiam and the switching crew proceeded with an engine and two cars up to the yards of the National Ammonia Company; that just about the time of entering the yards of the National Ammonia Company they picked up two more cars. According to the testimony the engine was pushing the four cars ahead of it and was headed towards the east. The train stopped at a point near the entrance to the yards of the Ammonia Company. Liston and McDaniel, both of whom were switchmen, got down off the train and stood about opposite the end of it, while Hiam, the foreman, who had a switching list in his hand, went into the yards of the Ammonia Company for the purpose of locating a car which his crew was to take out and send to the Merchants' Bridge. He proceeded along the track

which curved in a southeasterly direction until he reached the southeast corner of the boiler house where he found a car standing on the track about seven or eight feet southeast of the southeast corner of the boiler house which was located about one hundred and twenty feet southeast of the gas tank which was situated just south of the track at the entrance of the track into the yards. The evidence shows that this tank was situated so near the track that cars sometimes caught as they attempted to move the train past it. After locating the car the foreman walked back to a point within sight and hearing of the train and called to Liston and Mc-Daniel and told them to come in with the train when they were ready. At the same time he said for one of them to watch the tank in order to see whether the cars cleared it. Liston said he would watch the tank, and Hiam then proceeded ahead of the train down to a point near where the car which his crew was to take out and send to the Merchants' Bridge, was standing, the train following very slowly. After passing the tank McDaniel signalled for the train to stop, which it did, and he climbed up on top of the second car from the engine where he could see signals from Hiam and pass signals to the engineer. After getting on top of the train McDaniel signalled to the engineer to go ahead, which he did, and the train proceeded without further stop until it bumped against the car. The coupling missed the first time, whereupon Hiam gave a signal to stop. The train stopped and Hiam stepped in between the cars, adjusted the knuckle and stepped out again on the west side of the track at the southeast corner of the boiler house. He then gave a signal to come ahead and the train again bumped the car and Hiam stepped in between the cars and made the coupling. The train again stopped on Hiam's signal and he went across the track between the cers and removed a block of wood that had been used to "chock" the wheel of the car. Hiam then climbed up on the east side of the train on top of the car they had

just picked up, and gave a signal to back up, at the same
time callng out "outside" by which he meant for the
crew to take the train out on the main line. The engine
then backed, pulling the train with it, and passed clear
out of the yard of the Ammonia Company, and it was
not until after the train had stopped out on the main
line that it was learned that plaintiff's husband, Den-
nis U. Liston, had met with an accident. Some of the
switchmen went back into the yard, and it was ascer-
tained that a few minutes, probably not more than a
minute or two, after the train had pulled out from the
side of the boiler house, the watchman of the Ammonia
Company had found Liston dead at the northeast cor-
ner of the boiler house. When found he was lying with
his head about opposite the northeast corner of the
building, and one foot extended over the west rail of
the switch track. The train had passed over a portion
of his foot. His head was mashed, a blood stain on the
wall which was about as big as a man's hand and was
eighteen inches south of the northeast corner and three
feet above ground, showed that Liston had been crushed
against the wall and killed in that manner. The evi-
dence further showed that when the night yardmaster
learned of the accident a short while after it happened,
he caused the train to be backed into the yard where
the accident occurred and to be placed by the crew just
as nearly as possible as it was immediately after the
train had been coupled to the car. An inspection was
then made and it was found that there was a space of
only about five or six inches between the side of the car
as it stood at that point and the corner of the building.
Liston was not seen alive after he left the tank near the
entrance of the track to the yard. There was evidence
tending to show that Liston watched the cars pass the
tank and then passed around on the west side of the tank
towards the south. Nobody knew anything about his
movements after that moment. The testimony showed
that no other order of any kind was given to him. He

was acting as rear switchman that night and the evidence showed that the duty of the rear switchman usually called him to the end of the train farthest from the engine. McDaniel, Hiam and Liston were all provided with lanterns, and when Liston was last seen alive he had his lighted lantern in his hand. When Liston was found dead his lantern was on his arm, but not burning. The evidence does not show whether or not deceased knew of the closeness of the building to the track. It was a dark night, and signals had to be given with the lanterns.

Defendant, at the close of plaintiff's testimony, requested a peremptory instruction to the jury to find for the defendant, which was refused by the court. Defendant duly saved its exceptions and stood upon the demurrer, offering no testimony. The jury returned a verdict in the sum of five thousand dollars in favor of plaintiff. Defendant filed a motion for new trial which was overruled by the court, and defendant has appealed.

The errors assigned were that the court erred in overruling the demurrer to the testimony; that the court erred in giving instruction number one at the request of plaintiff, and that the court erred in refusing instruction number eight asked by defendant.

COX, J.—The contention that a demurrer to the testimony should have been sustained is based upon two propositions: First; that the negligence charged in the petition is not proven. Second; that the evidence shows that deceased had a lantern and that he ought to have discovered the danger and avoided being struck. The negligence charged in the petition directly applicable to this defendant against which judgment was obtained is that the defendant had ordered the deceased to work at a place in which it was unsafe to work in the nighttime without notifying the deceased of the dangers to which he would be exposed. As bearing directly upon this question the evidence shows that the crew of which

deceased was a member were directed by the night yard-master of defendant to take up a certain car and this car was found to be located at the southeast corner of the boiler house of the National Ammonia Company; that the track over which they were compelled to pass in order to reach this car was so close to a portion of this building that the cars would pass within six or eight inches of the building; that upon entering the yards there was a tank located so close to the track that the cars sometimes brushed this tank in passing, and that deceased was ordered by his foreman to watch the cars in passing the tank to see that they did not come in contact with it. Immediately after the cars had passed the tank, deceased was seen to pass around the tank to the south side, but was not seen any more until he was found dead. The other switchman, McDaniel, after the cars had passed the tank, signalled for the train to stop which it did. He then climbed up on the top of the second car from the engine where he could see signals from Hiam who had passed down the track ahead of the train, and pass signals from him to the engineer. After getting on top of the train, McDaniel signalled the engineer to go ahead which he did. The train then proceeded without further stop until it bumped against the car. It failed to couple the first time, and the second effort was made before the car was coupled. What the deceased was doing while all this was transpiring no one directly knows, but when we recall that he passed around the tank to the south, that the train stopped after the cars had passed the tank, we can see that he then had time to pass around and to locate himself upon the steps or ladder provided for the brakeman to climb to the top of the car. When found his lantern was on his arm. This would indicate that he had been riding upon these steps holding on with his hands, and for that reason, the lantern was upon his arm. While there is no direct evidence of this fact, the fact that the lantern was upon his arm would indicate it.

That the track was located so close to the building of the National Ammonia Company as to make it dangerous for men to work between it and the railroad track while cars would be in motion is clear. The defendant must have known the facts relating to that situation. The order of the night yardmaster to this crew to find and bring out that car was a direction to the entire crew to go wherever duty might call them in the effort to locate, couple on to and pull out that car. The evidence shows that deceased's duty called him to the end of this train farthest from the engine. This would place him at or near where the car was being coupled, and the fact that his foreman, Hiam, had preceded the train, and he, as a matter of fact, coupled the car, would not release Liston from his duty, in the absence of an order to the contrary, to assume his regular place as soon as the cars had passed the tank.

It is contended that the order for him to watch the cars to see that they did not come in contact with the tank was a direction to him to stay there, but with this we do not agree. This order only required him to stay at the tank until the cars had passed it, and as soon as they had passed it was his duty to assume again his regular place in the work that was then in hand. Naturally he would seek to assist in coupling the car and in the absence of evidence to the contrary, we have the right to assume that he was in the regular performance of his duty, and that he undertook to reach the rear of the train in order that he might assist in the coupling. With these facts before us we are clear that there was sufficient evidence to warrant the jury in finding that deceased was in the line of his duty at the time of his death, and that the defendant was negligent in ordering this crew, of which deceased was a member, to couple on to and take out that car in the nighttime.

The next contention as to why a demurrer to the testimony should have been sustained is based upon the fact that deceased was provided with a lantern, and that

by the use of the lantern he ought to have discovered the dangerous situation and avoided the injury, upon this question the evidence discloses no fact except the bare fact that he was provided with a lantern. There is nothing to indicate that he was familiar with the situation; that he knew that this building was so close to the track that parties could not pass between it and the train, and, as indicated before, the fact that the lantern was found upon his arm, is some evidence tending to show that he was riding on the steps or ladder of the car, and if that were true, and the lantern happened to be on the arm farthest from the building, he might not have seen the building, and might, while in that position, have been struck by the building, knocked down and then received the injury. Whether the injury occurred in this way or not we are not prepared to say, but the mere fact that deceased had a lantern was not sufficient to show that in this case he was guilty of contributory negligence.

The next error assigned was the giving of instruction number one on the part of plaintiff. Without repeating this instruction it is sufficient to say that it submitted to the jury the question of defendant's negligence in ordering the deceased to do the work of coupling this car in the place it was, in the nighttime, and the objection urged against it is that it allows the jury to find that plaintiff's husband was engaged in the work of aiding in the coupling of a car at the time of the accident when there was no evidence whatever that he was so engaged. The answer to this contention is that the evidence does show that deceased's duty called him to the rear of the train where the car was to be coupled, and the fact that he was found dead near the place where the car was being coupled shows that he had attempted to go to where the car was being coupled, and, in doing so, he was clearly within the line of his duty.

The second objection to this instruction is that it

149 App—16

submitted to the jury the question of the order having been given to deceased to assist in coupling the car. Contention is made that if this refers to the general order given by the night yardmaster, then the evidence fails to show that this order was the cause of the injury. We do not think the instruction open to this objection. When the order was given to find that car and take it out the order was tantamount to a direct command to go to any place where the car might be located and had the same effect as if the yardmaster had known at the time he gave the order where the car was located and specifically directed these men to take their train to that very place and couple on to this car. Our conclusion is that there was no error in this instruction.

It is next contended that the court erred in refusing instruction number eight asked on the part of defendant. This instruction was as follows:

"The court instructs the jury that if you cannot find from the evidence in this case how the plaintiff's husband met with his death, then your verdict must be for the defendant."

The court clearly was right in refusing this instruction. In this case the evidence tends to show that the deceased was in the line of his duty at the time he was killed. It also shows the conditions to have been such, as we have already stated, which would have warranted the jury in finding that it was negligence on the part of defendant to have sent deceased to that place to work in the nighttime. This being true, the law will presume that deceased was in the exercise of ordinary care. [Buesching v. The Gas Co., 73 Mo. 219, 233; Eckhard v. Transit Co., 190 Mo. 593, 613, 89 S. W. 602; Powers v. Transit Co., 202 Mo. 267, 280, 100 S. W. 655.] Giving the plaintiff the benefit of this presumption, the jury, under the facts in this case, were warranted in finding that the deceased came to his death by reason of the negligence of defendant.

The defense of contributory negligence is an affirmative one and the burden is always upon defendant to establish it, and when there is evidence tending to show that the injury was caused by the negligence of defendant that is all the plaintiff is required to prove. The burden is then cast upon the defendant to show that it occurred without any negligence upon its part, or if it asserts the injury was caused by the negligence of the injured party it must offer proof of that fact. This being true, and applying this rule to the facts in this case, our conclusion is that the plaintiff was not required to go further than it did to explain the circumstances of the injury, but if the defendant would excuse itself for having ordered the deceased to work in the dangerous situation in which it placed him, the burden was upon it and not upon plaintiff to explain how deceased came to his death.

The judgment is for the right party and will be affirmed. All concur.