# WILLIAM STRAUCHON, Appellant, v. METROPOLITAN STREET RAILWAY COMPANY.

### Division One, February 28, 1911.

1. **NEGLIGENCE: Demurrer to Evidence: Prima-Facie Case.** A demurrer to the evidence admits as true every fact and inference that may reasonably be deduced therefrom; and if plaintiff makes out a prima-facie case, according to that rule, a demurrer to the evidence cannot be sustained.

2. ————: ————: ————: **Crossing Track: Excessive Speed.** Plaintiff was walking at the rate of three or four miles an hour, and when he was sixteen to eighteen feet from the track saw a car coming two hundred feet away, which he supposed was running at its usual speed. At the ordinance maximum rate of twenty miles an hour, it would have reached him in seven seconds, and at the rate he was walking he would have crossed the track and been eight feet beyond in seven seconds. When he reached the track the car struck and injured him. There was positive evidence that the car was running from thirty to forty miles an hour. *Held*, that plaintiff made out a prima-facie case, and it was error to sustain a demurrer to the evidence.

3. ————: **Excessive Speed.** To operate a street car in excess of the maximum rate permitted by ordinance is negligence *per se*.

4. ————: **Contributory.** If defendant is guilty of negligence and plaintiff is not, but is injured as a result of defendant's negligence, plaintiff is entitled to recover damages.

5. ———: ———: **Observing Speed of Car: Erroneous Judg-ment.** A footman, who, in attempting to cross a street railway track, looks and sees, from a straight line or an acute angle, a car approaching two hundred feet away, is not chargeable with contributory negligence in supposing that, at the usual speed of cars on the track at the point, he will have ample time to cross, and thereafter gives no further heed to its approach, if in fact it was running at an unusual speed, and in excess of the maximum ordinance rate, and there is substantial evidence to the effect that, had it been running at its usual and lawful rate, he could have crossed in safety. Mere errors of judgment, where ordinary care is used, are not generally set down as amounting to negligence. The traveler has the right to presume, under such circumstances, that the car is being run within the prescribed rate.

Appeal from Jackson Circuit Court.—*Hon. Thomas H. Reynolds,* Special Judge.

REVERSED AND REMANDED.

*Guthrie, Gamble & Street* for appellant.

(1) The demurrer admitted every fact favorable to the plaintiff which the jury could infer from the evidence. Marshall v. Schricker, 63 Mo. 308; Mauerman v. Siemerts, 71 Mo. 101; Franke v. St. Louis, 110 Mo. 516; Patton v. Bragg, 113 Mo. 595; Berry v. Railroad, 124 Mo. 244; Bender v. Railroad, 137 Mo. 240; Deitring v. Railroad, 109 Mo. App. 541; Moore v. Railroad, 194 Mo. 9. (2) Defendant was negligent in running the car at a speed in excess of the ordinance limit. Duffy v. Railroad, 19 Mo. App. 380; Gratiot v. Railroad, 116 Mo. 450; Bluedorn v. Railroad, 121 Mo. 258; Hutchinson v. Railroad, 161 Mo. 246; Riska v. Depot Co., 180 Mo. 168; Epstein v. Railroad, 197 Mo. 720; Powers v. Railroad, 202 Mo. 267; King v. Railroad, 211 Mo. 1; Everett v. Railroad, 214 Mo. 55; McKenzie v. Railroad, 216 Mo. 1. (3) It was negligence for the motorman not to check the car or sound his gong when he saw plaintiff approaching the track

with a demeanor indicating an intention to cross ahead of the car. Kolb v. Railroad, 102 Mo. App. 143; Riska v. Railroad, 180 Mo. 168; Deitring v. Railroad, 109 Mo. App. 524; Heintz v. Railroad, 115 Mo. App. 667; Zander v. Railroad, 206 Mo. 445; Powers v. Railroad, 202 Mo. 267; Grout v. Railroad, 125 Mo. App. 552; Waddell v. Railroad, 213 Mo. 8; Felver v. Railroad, 216 Mo. 195; Dahmer v. Railroad, 136 Mo. App. 443. (4) Plaintiff, having looked at the car, was not necessarily negligent in failing to discern its excessive speed, for mere error of judgment is not negligence in law. Thompson on Neg., sec. 1669; White's Supp. to Thomp. Neg., sec. 1669; Eswein v. Railroad, 96 Mo. 290; Kellny v. Railroad, 101 Mo. 67; Gratiot v. Railroad, 116 Mo. 450; Hutchinson v. Railroad, 161 Mo. 246; Conrad Gro. Co. v. Railroad, 89 Mo. App. 391; Riska v. Depot Co., 180 Mo. 168; Deitring v. Railroad, 109 Mo. App. 524; Heintz v. Railroad, 115 Mo. App. 667; Powers v. Railroad, 202 Mo. 267; Grout v. Railroad, 125 Mo. App. 552. (5) Even if plaintiff was negligent, the motorman by reasonable care could and should have discovered his peril in time to avoid the injury. O'Keefe v. Railroad, 81 Mo. App. 386; Morgan v. Railroad, 159 Mo. 262; Hutchinson v. Railroad, 88 Mo. App. 376; Fearons v. Railroad, 180 Mo. 208; Moore v. Railroad, 194 Mo. 1; Eppstein v. Railroad, 197 Mo. 720; Powers v. Railroad, 202 Mo. 271; Zander v. Railroad, 206 Mo. 464; Waddell v. Railroad, 213 Mo. 8; Everett v. Railroad, 214 Mo. 55; Felver v. Railroad, 216 Mo. 195; Dahmer v. Railroad, 136 Mo. App. 443.

*John H. Lucas* for respondent.

(1) Raming v. Railroad, 157 Mo. 508; Holland v. Railroad, 210 Mo. 350; Laun v. Railroad, 216 Mo. 580; Green v. Railroad, 192 Mo. 137; Schmidt v. Railroad, 191 Mo. 228; Stotler v. Railroad, 204 Mo. 628; Rodan v. Railroad, 207 Mo. 411; McGreery v. Rail-

road, 221 Mo. 32; Degonia v. Railroad, 224 Mo. 599; Boring v. Railroad, 194 Mo. 549; Cole v. Railroad, 121 Mo. App. 609; Grout v. Railroad, 125 Mo. 559. (2) Reis v. Railroad, 179 Mo. 7; Van Bach v. Railroad, 171 Mo. 346; Sikes v. Knott, 197 Mo. 714; King v. Railroad, 211 Mo. 14; Gumm v. Railroad, 141 Mo. App. 313; Reno v. Railroad, 180 Mo. 469.

WOODSON, J.—The plaintiff brought this suit against the defendant, in the circuit court of Jackson county, to recover $10,000 damages for personal injuries received by him in consequence of the alleged negligence of the company, in running one of its cars against and striking him with great force and violence.

The petition seeks to recover upon the negligence of the defendant in running the car in violation of the speed ordinance of Kansas City, also upon the so-called humanitarian doctrine.

Both of these causes of action are stated in the same count in the petition; since, however, no point is raised in that regard, or as to the propriety of joining those two causes in the same petition, we dismiss it without further comment, as its sufficiency is not challenged.

The answer was a general denial, and a plea of contributory negligence; and the reply was a general denial of the answer.

The facts are few and simple, and are briefly and clearly stated by counsel for plaintiff, and not denied or criticised by counsel for the opposition. They are as follows:

"Independence avenue runs east and west. Cleveland avenue enters it on the south side, but does not cross Independence. Monroe avenue enters Independence avenue on its north side a short distance west of where Cleveland enters it on the opposite side; from Monroe to Cleveland there is a jog on Independence of about one hundred to one hundred twenty-five

feet to the eastward. The next street west of Monroe is Askew, which also enters Independence avenue from the north. Gladstone Boulevard is four or five blocks west of Cleveland avenue, and Indiana avenue crosses Independence between Gladstone and Askew, a short distance west of the latter. There is a steep down grade on Independence avenue beginning near Gladstone and extending as far east as Askew, but from Askew to Monroe the grade, though down, is not so steep. In fact, it is almost level.

"Mr. Strauchon testified that he started southward from the northeast corner of Monroe and Independence avenue to cross the latter, and as he did so he looked westward and saw the car coming. It was then west of Askew. He walked southward at an ordinary gait, about four miles per hour, to a point near the north rail of the north track (the distance from curb to track is not disclosed) when he again looked at the car. He saw that it was then as much as two hundred feet away from him. Although he looked at the car attentively, he did not discern that it was approaching at unusual speed. He had but fifteen to eighteen feet further to go to clear the south track. He thought he had ample time to cross, and would have had if the car had been running at its usual speed. He remembers nothing further that occurred until the next day, when he found himself at his home in bed, bandaged and unable to move. He was a resident of Kansas City, living near the place of the accident, on Cleveland avenue. He knew of the ordinance speed limit, although he had not read the ordinance. The court refused to permit him to testify what he understood the speed limit to be."

We quote the following from his testimony: "Q. State what occurred? A. Well, I just started to cross the street. When I started I looked up west and saw the car coming in the next block, and I went on across. That was about all that I know. Q. Where were you

when you last saw that car? A. Right at the north track. Q. You were at the north track? A. Yes, sir. Q. When you reached the north track where did you see this car? A. It was about half way up between Monroe and Askew. Q. That would be a distance of how many feet? A. Two hundred, I should judge. Q. How far did you have to walk from that point in order to clear the south track? A. Possibly eighteen feet—fifteen feet. Q. Fifteen to eighteen feet? A. Yes, sir. Q. And the car was two hundred feet away? A. Yes, sir. Q. Did you know the rate of speed at which the car was coming? A. No, sir, I did not. I supposed it was running in the usual manner—at the usual rate. Q. From where you were when you looked at the car, the last you recollect, did you see anything unusual, or could you see anything unusual in regard to its speed? A. No, sir. Q. Have you any recollection as to what occurred after that? A. No, sir.'' On cross-examination he testified: ''Q. You don't remember of seeing or knowing anything about the car after you were on the north-bound track? A. No, sir. Q. You mean by that, Mr. Strauchon, that you were not paying any attention to the car, or that you were just crossing there and don't remember what happened? A. I thought I had plenty of time to get over all right—I would ordinarily. Q. When you were there, just going on to the north track, did you turn your head or merely turn your eyes? A. No, I looked. Q. You turned your head so as to get a good look at it? A. Yes, sir; I looked right straight at the car. Q. How long did you look, just a passing glance? A. Just an instant; I didn't stop at all. Q. You kept right on walking? A. Yes, sir. Q. You were walking at your ordinary gait? A. Yes, sir.''

Plaintiff introduced the testimony of two passengers who were on the car, Mr. Long and Mr. Hogin. Both saw plaintiff through the window of the front vestibule. Mr. Long says that when he first saw him

he was walking almost straight southward, and had approached within about three or four feet north of the north track, and the car was then two hundred and forty to two hundred and seventy feet from him; that plaintiff continued steadily southward at an ordinary walk and without a pause or any indication that he was aware of danger, across the north track and onto the south track ahead of the car; that when plaintiff reached about the center of the south track, the witness, who had been watching him intently, averted his face. The next he saw of Mr. Strauchon was after the car had struck him. It ran onward past the place of collision two or three times its length, or about one hundred feet. This carried it clear across Cleveland avenue so that it stopped on the far side of Cleveland. The witness then got off, went back and found Mr. Strauchon lying in the street between the south track and the curb west of Cleveland, a distance which he estimates at twenty or thirty feet. The other testimony indicates that he was lying further west. Mr. Long, who was in the railroad business and had traveled a great deal for years and was well qualified to give an opinion, says the car had been traveling apparently in a race with an automobile that was running alongside at a high speed without any check, from as far west as Gladstone to where it struck plaintiff, very much in excess of the usual speed of the cars there, and at a rate of thirty-five to forty miles per hour. That no bell was rung or warning given until plaintiff was on the track directly in front of the car, and but a few feet ahead of it. He also testified that from the north rail of the north track to the south rail of the south track was a distance of about fifteen or sixteen feet, and hence plaintiff walked about eighteen or twenty feet from the place where the witness first saw him to the place where he was struck.

The other passenger was Mr. Hogin. He testified that when he first saw plaintiff the car was about

two hundred feet from Mr. Strauchon, and that Strauchon was then about midway between the north curb and the north track. But how many feet this would be from the track he was not asked and does not say. He says plaintiff continued to walk southward in an ordinary gait of three or four miles per hour. The witness realizing the speed at which the car was approaching Mr. Strauchon, arose from his seat and stood in the aisle watching him, and did not take his eyes off him. He says that Strauchon proceeded without any pause across the north track, and was stepping onto the south track when for the first time the motorman sounded his gong and made an attempt to stop the car, which was then within thirty feet of plaintiff, and going at a speed of twenty-five to thirty miles per hour. At the sound of the gong plaintiff looked up, jumped forward to get off the track, and was struck before he could get entirely clear, so that he was thrown to the south side of the car. This was forty or fifty feet west of Cleveland, and the car after striking plaintiff ran clear across Cleveland, a distance of about 130 feet. This witness also agrees with Long as to the race of the car down the hill with the automobile, and says that before the car reached Askew there was a passenger's stop signal given by means of a push button which the motorman disregarded, and that the car rushed by Askew without slacking speed an instant, and continued at full speed until it was almost upon plaintiff.

Another witness, Mr. Northrop, a merchant whose store is on Independence avenue, a half block west of Askew, tried to board the car at Askew, but it did not stop. He testifies that he was formerly a street car conductor in the defendant's employ, accustomed to judge the speed of cars, and that this one was going thirty-five miles per hour when it passed him at Askew, one block west of where it struck Strauchon; which is relevant, because Mr. Hogin says it did not

slacken speed from that time until it was within a few feet of plaintiff. He, like Mr. Hogin, says Mr. Strauchon fell about fifty feet west of Cleveland.

Wm. T. Ross, an ex-motorman, testified that if it took as much as one hundred and fifty feet within which to stop a car of this type at that place, it must have been going at least thirty-five miles per hour.

The only other witnesses who testified were Mrs. Northrup, whose testimony was immaterial, and the physicians, Herr and Von Quast.

The ordinance speed limit was proven as pleaded. The "Independence Line," which the ordinance exempts, is not the Independence Avenue Line on which the collision occurred. The latter is a street in Kansas City, and defendant conceded that at the place in question the speed limit was twenty miles per hour.

Here the plaintiff rested his case, and thereupon counsel for defendant interposed an instruction in the nature of a demurrer to the evidence. Counsel for plaintiff objected to this instruction, which objection was, by the court, overruled. The court then gave the instruction as asked, and counsel for plaintiff duly excepted, and took a non-suit with leave to move to set the same aside. Within proper time counsel for plaintiff filed a motion to set aside the non-suit theretofore taken, and for a new trial, which was by the court overruled; to which action of the court plaintiff excepted, and duly appealed the cause to this court.

I. It is elementary in this State that a demurrer to the evidence admits as true every fact and inference that may be reasonably deduced therefrom. [Crossett v. Ferrill, 209 Mo. 704; Meily v. Railroad, 215 Mo. 567.]

According to that rule of evidence, did the appellant make out a prima-facie case for the jury? In our opinion he did.

The evidence shows that appellant started south from the northeast corner of Monroe and Independence avenue to cross the latter,. and as he did so he looked west and saw the car coming, which was then west of Askew street. He was walking at an ordi-. nary gait of three or four miles an hour, and when he reached a point a few feet north of the north rail of the north track, the exact distance not shown, he again looked and saw the car approaching him, about two hundred feet away. He looked at and saw the car approaching and estimated the distance it was from him, yet he did not discern that it was approaching at an unusual rate of speed. That he thought he had ample time to cross both tracks in perfect safety before the car would or could reach the line of his crossing, as he had only sixteen to eighteen feet to travel to clear both tracks, while the car had about two hundred feet to run while he would have walked that sixteen or eighteen feet. That when he reached the center of the south track, the car struck and injured him. Now, it must be remembered that the demurrer admits that evidence as true. That being so, then, if appellant had but eighteen to twenty feet to travel in order to clear both tracks, as some of the evidence tended to show, and was traveling practically at four and one-third feet per second, he would have gone that distance in four and three-fourth seconds; and if the car was at the same time about two hundred feet away, as the evidence tended to show, and had it been traveling only twenty miles an hour, which was the limit of the speed as prescribed by the ordinances of Kansas City, then it would have been traveling at a rate of speed of practically twenty-nine feet per second; and at that rate it would have taken practically seven seconds for it to have traveled the two hundred feet mentioned; and during that time appellant would have passed over both tracks two and a quarter seconds prior to the time the car would have

Strauchon v. Met. St. Ry. Co.

reached the point where he would have passed over them; and had appellant continued on south at the same speed of four and one-third feet per second, he would have been about eight feet south of the south rail of the south track when the car would have reached the point where he would have passed over the tracks. But instead of the car running at only twenty miles an hour, it was running from thirty to forty miles an hour, which was at a rate of speed from forty-four to fifty feet a second. If the car was traveling only forty-four feet per second, then it would have taken it practically four and a half seconds to have traveled the two hundred feet; and if it was running fifty feet per second, then it would have taken it four seconds to have run the two hundred feet, neither of which would have given appellant time to have passed the tracks. (Those figures and distances are only approximations.)

It necessarily follows from that showing, that the car was being operated in excess of the speed limited by the ordinance, and that in consequence thereof appellant was injured; and under the decisions of this court such excessive speed was negligence *per se.* [Gratiot v. Railroad Co., 116 Mo. 450; Bluedorn v. Railroad Co., 121 Mo. 258.]

We are, therefore, of the opinion, as previously stated, that the appellant made out a prima-facie case. In fact, we do not understand counsel for respondent to seriously controvert that conclusion; but it strenuously insists that appellant's own evidence showed such contributory negligence on his part as should prevent a recovery; and for that reason the demurrer was properly sustained.

This proposition will receive consideration in the succeeding paragraph of the opinion.

II. This brings us to the only remaining proposition presented by this record for our determination,

namely: Does the record show that the appellant was guilty of negligence which directly contributed to his injury? If so, then, under a uniform and unbroken line of adjudications of this court, he cannot recover, except, of course, under the humanitarian doctrine, which is foreign to the question now in hand. If upon the contrary appellant was not guilty of such negligence, then, of course, he was entitled to a recovery, and, in that event, the trial court erred in sustaining the demurrer to the evidence.

Counsel for respondent insist that since appellant testified that he looked and saw the car which struck him approaching him from west of Askew Street, and again when it was about two hundred feet west of the place where he was struck, he was guilty of negligence in not also observing its speed, and avoiding coming in contact with it; and having failed to do so, he was guilty of negligence. Ordinarily that might be a statement of a sound legal proposition, but not so under the facts disclosed by this record.

The evidence shows that when appellant first saw the approaching car it was four or five hundred feet west of him, and that he was then leaving the northeast corner of Monroe Street and Independence avenue for the purpose of crossing the latter. That when he was within fifteen to eighteen feet of the point of collision he saw the car approaching two hundred feet west.

According to those figures, we have a triangle with a base two hundred feet in length, representing the car tracks from the point where appellant last saw the car approaching him to the point of the collision; the perpendicular of the triangle was fifteen or eighteen feet, say the distance from the point where he was when he last noticed the car to the place of injury, and the hypothenuse thereof, which represents the appellant's line of vision from the top of the per-

pendicular west to the point where the car was, name-
ly, two hundred feet west.

If the perpendicular was eighteen feet, then the
hypothenuse was 200.808 feet in length, and the angle
opposite the perpendicular was 5° 9′. If the per-
pendicular was only fifteen feet instead of eighteen as
some of the evidence tended to show, then the angle of
appellant's vision would have been something less
than that previously mentioned.

From that evidence, it will be observed that ap-
pellant's viewpoint was practically in front of the
approaching car; and under that state of facts, the
latter testified that while he saw the car approaching,
yet by looking at its approach from that acute angle
he was unable to ascertain its exact speed; and hav-
ing had nothing specially to call his attention to its
speed, he naturally supposed that it was running at
the ordinary lawful rate, and was not running in viola-
tion of the ordinance of the city; and relying upon
that presumption, and knowing that he would have
had ample time in which to have crossed the tracks in
perfect safety had it not been running in violation of
law, he proceeded to cross in front of the car without
paying any further attention to its approach.

The demurrer admits that evidence to be true;
and upon those admitted facts, counsel for respond-
ent insists that they show contributory negligence, as
a matter of law, and should bar appellant's right to
a recovery in the cause.

We are unable to lend our concurrence to that in-
sistence, for the reason that common knowledge and
universal experience teach us, that when one views
an approaching train from a point directly in front
of it, or from a very acute angle, as was shown by the
evidence in this case to be true, it is much more diffi-
cult to judge of its speed than if it is viewed from the
side thereof, or from an obtuse angle. That fact is

recognized by the law, and has been so held repeatedly by this court.

Moreover, appellant testified that he looked for and saw the car approaching him, but through no fault of his he failed to discern the fact that the car was running in excess of the speed limited by the ordinance.

At most, the conduct of the appellant, as shown by this evidence, can only be characterized as poor judgment, and it does not degenerate into negligence.

Judge Thompson in his work on Negligence, vol. 2, p. 358, sec. 1669, in treating of this question, says: "Mere errors of judgment, where ordinary care has been exercised, are not generally set down as amounting to negligence. This rule is sometimes applied so as to exonerate travelers, killed or injured at railway crossings, from the imputation of contributory negligence—as where the traveler, unable to see the approach of the train until close upon the track, makes an error of judgment in attempting to cross ahead of it, instead of trying to stop suddenly to avoid the danger. . . . The rule is the same where the traveler is injured through miscalculating any other element of safety or danger."

And in White's Supp. to Thomp. Neg., p. 318, sec. 1669, it is said: "It is not required that a traveler should anticipate that an approaching train will proceed at an unlawful or unusual rate of speed, and he will not be charged with negligence, as a matter of law, in attempting to cross, if, in view of the distance at which the track seems to be clear, he would have time to cross before a train going at the usual and lawful speed would reach the crossing."

In Gratiot v. Missouri Pacific Ry. Co., 116 Mo. l. c. 464, this court said: "Although defendant saw the train, and afterwards and before it struck him attempted to cross the railroad track, yet, if he did not know what train it was and that it was usually run

at a rate of speed prohibited by the ordinance, he had
the right to presume that it was running within the
prescribed time, at a rate not exceeding six miles per
hour, and if such had been the case and he would
have had time to have gotten across the track in safety
before it could have moved to where the collision oc-
curred from where it then was, or he could have gotten
his horse out of the way of the train in time to have
avoided the collision, he was not guilty of such con-
tributory negligence as would have justified the court
in taking the case from the jury.''

And in Murray v. Transit Co., 108 Mo. App. 1.
c. 507-508, the St. Louis Court of Appeals said: ''A
man might easily misjudge the speed of a car or its
distance from him, after straining his senses to ascer-
tain whether he could safely venture on the track;
might make an honest mistake and under an erroneous
impression concerning the car's speed or distance, go
forward and be hurt.  Whether plaintiff's misappre-
hension was induced by carelessness or by a deception
of the senses, or an error of judgment, was a matter
for the jury. . . . The plaintiff swore he saw the
car which hurt him, but did not realize its speed, and
supposed he could cross the track before it would
reach him.  If this statement is true, is he to be
charged with negligence as a matter of law, or was
the issue of his negligence for the jury?  We hold it
was for the jury, not feeling competent to say that by
ordinary prudence the plaintiff was bound to observe
the car was under a speed so high as to make it peri-
lous to go on the track ahead of it, when it was half a
block distant.''

In Heintz v. Transit Co., 115 Mo. App. 667, 1. c.
671, it is said: ''His judgment was at fault, and if
he is to be convicted of negligence, as a matter of
law, it must be on the ground that he did not realize
the speed at which the car was running.  He was in
front of the car and it was coming toward him.  In

this situation it was difficult, if not impossible, for him to correctly estimate its speed."

In Powers v. Transit Co., 202 Mo. 267, 1. c. 280, this court said: "But assuming, as she had a right to do, that the car was not being run at a rate of speed in excess of that prescribed by ordinance, and that she did not know, or, in the exercise of ordinary care, could not have known that it was so running, she was not guilty of negligence in proceeding to cross the street, using ordinary care and caution in so doing. Whether she looked or not was, of course, a question for the jury. The evidence all shows that the car was running at an excessive rate of speed when deceased left the the sidewalk and looked to see, as the law presumes she did, if the car was approaching, which at that time must have been nearly a block away. She walked not directly towards the track, but in a south-westerly direction. From the time she left the side-walk, until struck by the car, the motorman saw her, and when he apprehended danger to her he threw off the power, began sounding the bell and hallooing to her, but she paid no attention to either, seemed unconscious of danger, and took no notice of the warning. The motorman could have stopped the car in from twenty to twenty-five feet had it been running at the rate of eighteen miles an hour, and in a much shorter space had the car been running at a rate of speed not exceeding eight miles per hour. If the motorman saw the deceased all the time after she left the sidewalk until struck by the car, he must have seen her perilous position in time to have checked up the car and avoided the injury."

The case at bar is a much stronger case than the last one cited. There the case rested upon a technical presumption; while here the appellant's testimony tended strongly to prove all those things to be true which there rested upon presumption only; and the de-

murrer in this case admitted that testimony to be true.

It is useless to pursue this review of authorities further, as they all point unerringly to the same conclusion.

For the reasons before suggested, we are of the opinion that the trial court erred in sustaining the demurrer to appellant's evidence.

The judgment is, therefore, reversed, and the cause remanded for a new trial. All concur, except *Valliant, J.,* absent.