## JOSEPH CRISS, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals.    Argued and Submitted April 8, 1914.
Opinion Filed May 5, 1914.

1. **TRIAL PRACTICE: Demurrer to Evidence: Rules of Decision.** In determining whether or not a demurrer to the evidence should be sustained, plaintiff is entitled to the benefit of all the evidence introduced by him, as well as every reasonable inference that may be drawn therefrom.

2. **STREET RAILWAYS: Injury in Crossing Collision: Violation of Vigilant Watch and Speed Ordinances: Sufficiency of Evidence.** In an action for injuries to the driver of a wagon struck by a street car, evidence *held* sufficient to warrant submission to the jury of the questions whether the motorman violated a municipal ordinance requiring him to keep a vigilant watch for all vehicles on or approaching the track and to stop his car on the first appearance of danger thereto, in the shortest time and space possible, and a municipal ordinance prohibiting a greater rate of speed than ten miles an hour.

3. ———: ———: **Contributory Negligence: Last Chance Doctrine.** The bare knowledge of one driving a wagon onto a street car track of the approach of a street car merely makes him guilty of contributory negligence, which can prevent the operation of the last chance doctrine only if, after such negligence becomes apparent to the motorman, there is no time for him to avoid a collision; the driver's knowledge of the car's approach only affecting the last chance doctrine when such knowledge becomes apparent to the motorman, in which case he may assume that the driver will not intentionally go into a place of danger on the track.

4. ———: ———: **Contributory Negligence.** Ordinary care does not require a person to constantly look both ways, when approaching street railway tracks at a street crossing and while upon the track, but it is sufficient if, before he attempts to cross, he satisfies himself that, in the usual course of things, he can cross in safety, considering the distance the car is from him, knowing his own rate of travel and the rate of travel the car is allowed to travel by law.

5. **APPELLATE PRACTICE: Conclusiveness of Verdict.** The appellate court will not consider the question of whether a verdict is against the weight of the evidence or in disregard of the instructions.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

AFFIRMED.

*Boyle & Priest* and *R. E. Blodgett* for appellant.

The demurrer to the evidence should have been sustained. The failure to sound the gong cannot be considered. Green v. Railroad, 192 Mo. 143. The case could not be submitted on the violation of the vigilant watch ordinance or humanitarian doctrine. McGee v. Railroad, 214 Mo. 530; Hawkins v. Railroad, 135 Mo. App. 534; Guyer v. Railroad, 174 Mo. 351; Graefe v. Transit Co., 224 Mo. 232; Behen v. Transit Co., 186 Mo. 430; Mockowik v. Railroad, 196 Mo. 567. The violation of the speed ordinance will not support a recovery on account of the contributory negligence of the plaintiff as a matter of law. McCreery v. Railroad, 221 Mo. 18; Paul v. Railroad, 152 Mo. App. 577; Sanguinette v. Railroad, 196 Mo. 466; Boring v. Railroad, 194 Mo. 541; Reno v. Railroad, 180 Mo. 469; Mockowik v. Railroad, 196 Mo. 550.

*Earl M. Pirkey* for respondent.

(1) Where plaintiff sees a street car coming and tries to cross the track before the car reaches him, he is not guilty of negligence as a matter of law—if the car is running at an unlawful speed and reaches him because of this speed and plaintiff did not know the car was running at an unlawful speed when he entered the danger zone; if the motorman could with safety to the passengers have by the exercise of ordinary care stopped the car or checked its speed sufficiently as to have prevented the collision. Strauchon v. Metropolitan Street Railway Co., 232 Mo. 600; Hauck-Hoerr Bakery Co. v. United Rys. Co., 127 Mo. App. 190; Borders v. Street Ry. Co., 168 Mo. App. 172. (2) Testimony that the perilous position of the wagon and team

could be seen from the car when it was one hundred and fifty feet away and that the car could have been stopped with safety to the passengers in a shorter distance, raised a question of fact for the jury, regardless of whether plaintiff was negligent or not. Hauck-Hoerr Bakery Co. v. United Rys. Co., 127 Mo. App. 195; McQuade v. St. L. and Suburban R. Co., 200 Mo. 158; Waddell v. Met. Street Ry. Co., 213 Mo. 16. (3) The law presumes, in the absence of proof to the contrary, that one crossing the track acts upon the assumption that an approaching car is not being run in excess of the maximum speed permitted by the ordinance, and in such case the court has no right to assume, as a matter of law, that his conduct is negligent. Hutchinson v. Railroad, 161 Mo. 247. (4) A party is not so bound by the testimony of one of his witnesses that he may not show the facts to be different by other witnesses. Phelan v. Paving Co., 227 Mo. 711. (5) The court takes judicial notice that a street car on a level track running at not more than seven miles an hour can be stopped by the motorman by the exercise of ordinary care within forty feet after he first sees a vehicle in danger. Latson v. St. Louis Transit Co., 192 Mo. 460.

REYNOLDS, P. J.—Comparing the evidence in the case as set out in the abstract with the statement as prepared by counsel for respondent, we find the latter statement so concise that we follow it with some additional statements taken from that of counsel for appellant, and a few of our own, with the premise that the accident occurred in the city of St. Louis and within what is designated as the central district, the speed in which is not to exceed ten miles per hour, and that the streets referred to are streets of that city.

Eleventh street runs north and south. Chouteau avenue runs east and west. The next street south of Chouteau is Hickory street. Between Hickory street

Criss v. United Railways Co.

and Chouteau avenue there is an alley running east and west. About ninety-four feet south of the alley and on the east side of Eleventh street is a large building occupied at the time by the American Manufacturing Company, which, until passed, obstructs the view of Eleventh to the south. The plaintiff was a teamster in the employ of the Standard Transfer Company, which at the time was doing the teaming for the American Manufacturing Company. The defendant operates a double track on Eleventh street between the two streets mentioned, over which tracks it runs two lines of cars, known as the Cherokee and Tower Grove cars, these cars running north on the east track and south on the west track. Eleventh street, at the alley, is fifty feet wide from building line to building line. The alley is twenty-four feet, ten inches wide. From the building line on the east side of the street at the alley to the east rail of the northbound track the distance is seventeen feet, four inches. The north line of the alley is five hundred and sixty-seven feet north of the north line of Hickory street, its south line five hundred and forty-three feet, two inches north of the north line of Hickory street. The north line of the alley is one hundred and sixty-six feet south of Chouteau avenue. The cars on each line run about three or four minutes apart each way. From Hickory street to Chouteau avenue is slightly down grade.

On the 24th of October, 1911, at about half past one o'clock in the afternoon, the day being clear, plaintiff was driving his wagon from the premises of the American Manufacturing Company out of the alley north of the building of that company and along that alley, intending to go to a scale west of Eleventh street. The wagon was drawn by two horses and was loaded with what are called "patches." With its load the wagon weighed between 12,000 and 13,000 pounds. The body of the wagon was about twelve feet long, the tongue some ten or twelve feet additional. Plaintiff

was well acquainted with the location, having driven out of this alley from time to time for some six or seven years. According to his own testimony, on the day of the accident as he drove along the alley, and before he passed the building line, he stopped his team and listened but heard no car. He then drove further so that he could see south past the building and toward Hickory street, and there stopped his team, the heads of his horses then being about three feet east of the east or northbound track. That put him, seated in his wagon, about fifteen feet from the east track, and two feet clear of the building line. He looked south and saw a northbound car at Hickory street, but he could not tell whether the car was moving or had stopped. So that when he saw the car it was about five hundred and forty-two feet and two inches south of him, south of the south line of the alley out of which he had driven. He then started to cross the tracks, driving at the rate of about two miles an hour. When his horses had crossed the west rail of the east tracks he again looked toward the south and saw the car about forty feet from him and coming toward him at a rate of speed which plaintiff estimated at from twenty to twenty-five miles an hour. That is, while plaintiff had traveled about eight feet the car had covered about five hundred feet. Plaintiff immediately started to whip up his horses, and when the front wheels of his wagon were about at the west rail of the northbound or east track, the street car struck the wagon about at the front wheel, hurled it and the horses bodily off the track and around to the northeast corner of the alley, where the wagon struck against an iron lamp post, which it broke; the horses were thrown down and plaintiff was thrown to the street and sustained injuries on account of which he brought this suit. The car ran about ten feet further before it stopped. The noise of the collision was so loud that it was heard by persons at some distance.

All of the witnesses testifying for plaintiff, as well as plaintiff himself, testified that the car had neither sounded any gong nor slackened up any immediately before the collision. Other witnesses than plaintiff, testifying for him, stated that the street car at the time of the collision was running between twenty and twenty-five miles an hour. There was testimony to the effect that when the team was going off of the west rail of the east or northbound track, the street car was then about 150 or 200 feet south of there and coming on at a rapid rate, at from twenty to twenty-five miles an hour, as they testified. All of the witnesses testifying for plaintiff, and there were a number of them, testified that the street car failed to slacken its rate of speed at any time before the collision, but was then running at a rate of from twenty to twenty-five miles an hour. Counsel for appellant in their statement of the case admit that there was evidence in the case tending to show that the car was 150 feet from the wagon when the front wheels of the latter reached the east rail. Testimony of witnesses, introduced as experts, was to the effect that a car running at a rate of speed of twenty miles an hour could be stopped in 120 feet; at twenty-five miles an hour in 125 feet, but that with the type of car in question a very steep grade was necessary to obtain a speed of twenty miles an hour. One of these witnesses, a former motorman in the employ of defendant, testified that he could stop a car going at the rate of twenty miles an hour in eighty-five feet, and when going at thirty miles an hour in 125 feet.

On the part of defendant there was evidence tending to show that while the car was approaching the alley at the rate of eight or ten miles an hour, plaintiff drove from the alley immediately in front of the car and so close thereto that the car could not be stopped in time to avert a collision. There was also testimony on the part of defendant to the effect that as soon as the motorman in charge saw the position

of the team, which was then, as he said, some forty
feet from him, he endeavored to check up but was
unable to prevent the collision, and that when he first
saw the wagon and team the horses were then about
to cross the northbound track.

The allegations of negligence are failure to sound
a warning, violation of the so-called "vigilant watch"
ordinance, or "humanitarian doctrine," and violation
of the speed ordinance of the city. Both of these ordi-
nances were introduced in evidence by plaintiff, the
so-called "vigilant watch" ordinance providing that
the conductor, motorman, or other person in charge of
each car should keep a vigilant watch for all vehicles
and persons on foot, especially children, either on the
track or moving toward it and on the first appearance
of danger to such persons or vehicles, the car shall be
stopped in the shortest time and space possible, and
the "speed ordinance" providing that street cars op-
erated within what is known as the "central district"
shall not be propelled at a greater rate of speed than
ten miles per hour. The allegation of negligence based
on a failure to sound a warning was taken from the
jury by an instruction of the court. Defendant inter-
posed demurrers at the close of the testimony for plain-
tiff and again at the close of all the testimony in the
case, which were overruled and exceptions saved.

The only instruction asked on behalf of plaintiff
was as to the measure of damages.

At the instance of defendant the court gave ten
instructions. First, that plaintiff was not entitled to
recover upon the assignment of negligence involved
in failure to sound the gong. It will serve no useful
purpose to repeat all of the remaining nine. It is
sufficient to say that they placed the case before the
jury in the most favorable light possible for defend-
ant. Thus the third told the jury that their verdict
must be for defendant, if they found from the evidence
that plaintiff was aware of the approach of the car

and thereafter could have stopped his team before he got upon the track, but that he knowingly drove upon the track immediately in front of the approaching car and so close thereto that the motorman could not, with the means and appliances at hand, stop the car in time to avert the collision.

The fourth told the jury that if they believed that the motorman in charge of the car was keeping a vigilant watch for vehicles approaching the track and that he stopped the car within the shortest time and space possible with the means and appliances at hand, after he saw plaintiff approaching the track, plaintiff could not recover.

The fifth told the jury that although they might believe from the evidence that the car could have been stopped in time to have averted the collision after the motorman saw, or by the exercise of ordinary care, could have seen plaintiff in a position of danger, and that he failed to stop the car in time to avoid the collision, yet if the jury further believed from the evidence that plaintiff saw the car approaching before he drove upon the track, and that by stopping his team he could have remained off the track and thereby avoided the collision, and that he drove upon the track knowing that the car was approaching and immediately in front of the car, he was not entitled to recover.

The remaining instructions were equally favorable to defendant. We make no ruling as to the correctness of these instructions.

Of its own motion the court gave an instruction that the burden of proof was upon plaintiff to establish by the preponderance or greater weight of evidence, the facts necessary to a verdict in his favor under the instructions, the court defining burden of proof and preponderance of evidence. The court also gave the usual instruction as to the credibility of witnesses and the number of jurors necessary to concur in a verdict.

In addition to the instructions in the nature of demurrers to the evidence, which were refused, defendant asked the court to withdraw from the jury the assignment of negligence based on a violation of the vigilant watch ordinance.

Defendant also asked the court to withdraw from the jury the assignment of negligence founded on the speed ordinance.

These were refused, defendant excepting. The jury returned a verdict in favor of plaintiff, and judgment following, defendant has duly perfected its appeal to this court, making three points. First, that the demurrer to the evidence should have been sustained, claiming under this that the failure to sound the gong could not be considered; that the case should not have been submitted on the violation of the vigilant watch ordinance or humanitarian doctrine, and that the violation of the speed ordinance would not support a recovery on account of the contributory negligence of plaintiff, as a matter of law. The second and third assignments of error are to the refusal of the court to give the two instructions last above referred to.

We have before noted that the negligence charged in failing to sound the gong was taken from the jury. As concerning the other two propositions under this first assignment, namely, that the case should not have been submitted on violation of the vigilant watch ordinance or humanitarian doctrine, and on violation of the speed ordinance, it is urged that the testimony will not support a recovery on either of these grounds, because of the contributory negligence of plaintiff, as a matter of law. We are unable to agree with learned counsel for appellant on these propositions. As a matter of course, in considering the evidence in this case, plaintiff is entitled to the benefit of all the evidence which he introduced and to every reasonable inference that the jury can draw from that evidence. There was substantial evidence here, first, that the motorman

in this instance had not observed the vigilant watch or-
dinance. According to his own testimony he did not see
this team until the horses had crossed the west·rail of
the northbound track. But the team had then traveled
toward that track for about twenty-one feet from the
building line and while going over that distance was in
plain sight. There was no direct evidence as to what
the motorman was doing during the whole time that he
was moving his car a distance of some 500 feet from
Hickory street, and during all of which time plaintiff
was obviously intending to drive across the track. The
jury had a right to infer from this that the motorman
was not keeping a vigilant watch for wayfarers or
teams on the track ahead of his on-coming car. It was
a clear day, broad daylight, and how it was possible for
any man, who was attending to his business, to have
traveled that distance on a car, no matter at what speed
it was going, and not have seen this team of horses and
large truck wagon, until he got within forty feet of it,
certainly would tax the credulity of any ordinary jury.
He could not help seeing that plaintiff was in a place
of danger; that he was attempting to cross this track,
either unconscious of his danger, or in an effort to
avoid it. A witness blurted out, in testifying, that he,
seeing the team crossing and the car approaching at a
rapid rate, said to a companion: "That motorman
must be asleep." Of course this was stricken out as
improper testimony, but it looks to us very much as if
that was near the truth.

The physical facts in evidence are against appel-
lant on the assignment of a violation of the speed ordi-
nance. We have stated the space covered and the facts
attendant upon the occurrence. A loaded wagon,
weighing 12,000 or 13,000 pounds, and two horses and
the driver are thrown completely off of the track and
across the street, landed against an iron lamp post,
which was broken in the collision, and yet the car ran

some ten feet further! To say that this could have resulted from impact with a car running at a rate of not to exceed ten miles an hour seems hardly probable.

Even if it may be said that plaintiff contributed to his hurt by not being sufficiently cautious and careful, this, under an application of the humanitarian doctrine, did not absolve the motorman from looking out for a possible wayfarer and endeavoring to avoid injuring him. The rule as to this is very well stated in a recent decision by the Kansas City Court of Appeals, Peterie v. Metropolitan St. Ry. Co., 177 Mo. App. 359, 164 S. W. 254. There it is said that the bare knowledge of one driving a wagon onto the track of the approach of a street car could only make the driver guilty of contributory negligence, which can prevent the operation of the humanitarian rule, if, after such negligence became apparent to the motorman, there was no time for him to avoid a collision; the driver's knowledge of the car's approach only affecting the humanitarian rule, if such knowledge became apparent to the motorman, in which case he could assume that the driver would not intentionally go into a place of danger on the track.

We see no evidence here of such contributory negligence as would free the employees of defendant from the force of the humanitarian doctrine. Ordinary care did not require plaintiff to constantly look both ways— even if that is possible—when approaching tracks along a street crossing and while upon the track. It is sufficient if, before he attempted to cross, he satisfies himself that in the usual course of things he can cross in safety; that is, considering the distance from him of an approaching car, knowing his own rate of travel and the lawful rate of travel allowed the car. [Hutchinson v. Missouri Pac. Ry. Co., 161 Mo. 246, l. c. 254 and 257, 61 S. W. 635, 852; Strauchon v. Metropolitan St. Ry. Co., 232 Mo. 587, l. c. 596, 135 S. W. 14.]

So looking at the evidence we cannot agree to the other assignments of error going to the refusal of the court to give the two instructions asked by defendant. There was evidence of violation of both ordinances, and to have given them would have been in total disregard of evidence before the jury. When we consider the instructions given in this case at the instance of defendant, it surely cannot be pretended that the case was not submitted to the jury by the court in the most favorable aspect possible to defendant. In the light of these instructions to hold that the verdict of the jury should be overturned, would, in effect, be to hold that the jury had disregarded them and had rendered a verdict contrary to the instructions of the court. That is a matter for the determination of the trial court and as he was satisfied with the weight of the evidence and that there was no disregard of the instructions given, neither question is open to us, as we are satisfied from an examination of the testimony in the case that there was substantial evidence warranting the jury in arriving at the verdict reached by them in this case.

The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.,* concur.